

# THE ATTORNEY GENERAL
## OF TEXAS

GROVER SELLERS

XXWELXXWILSONXXXXXX

ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable J. M. Williams
County Auditor
Tarrant County
Fort Worth, Texas

Dear Sir:

Opinion No. 0-7032
Re: Authority of Tarrant County to
lease certain buildings and
hangers on an airport and re-
lated questions

Your letter of March 14, 1946 contains the fol-
lowing facts:

"Recently there has been a tentative offer by the
Federal Government to Tarrant County of the Naval Air
Base Training Station at Eagle Mountain Lake, in Tarrant
County. This tentative offer consists in an offer on
the part of the Federal Government to turn this air
field over to Tarrant County conditioned upon the
County's maintaining said air field or airport and
with the further proviso that the Federal Government
reserves the right at all times to use said airport
to the extent of twenty-five per cent of its capacity
should it desire to do so and reserves the further
right to again assume control of said airport in the
event of a National emergency which would require the
Federal Government to use the airport for defensive
purposes as has heretofore been used.

"The Commissioners Court does not desire to incur
any expense by reason of its taking over said air base
and a private individual has offered to lease the air-
port from Tarrant County and to assume the burden of
maintaining said airport in the condition in which it
will be when turned over to Tarrant County by the
Federal Government. It appears from Section 1 of Article
1269h that the Commissioners Court of any County has
authority to receive by gift or dedication and to there-
after maintain and operate an airport, and under sub-
division (d) of Section 1 of said Article 1269h, it is
provided that the county is authorized to lease any air-
port which may be acquired by the County to any incor-
porated city or municipality within said county or to the

Federal Government for the purpose of maintaining
and operating an airport."

Your letter of recent date requesting the opinion
of this department is based on the foregoing facts.  We quote
from said request as follows:

"On March 14, we asked you  for a ruling on
counties securing Federal Naval Air Base Training
Station at Eagle Mountain Lake, Tarrant County.
On March 15, we received copies of your opinions
0-6924, 0-6878 and 0-3865.

"Conditions have arisen that we are unable to
determine by your opinions; could counties lease
buildings and hangers or a part of the buildings and
hangers, and also leasing a part of the farm land on
this 2,400 acre tract, or would it be necessary for the
county to operate this under their complete supervision?

"We would also like to know if it would be
necessary to finance this through our General Fund,
and if a profit was made, could the profit from
this Air Port be applied to General Fund Expendi-
tures of the County, or would it be necessary to set
up an Air Port Fund?"

Article 1269h, Vernon's Annotated Civil Statutes is
in part as follows:

"Section 1.  A-That the governing body of any
incorporated city in this State may receive through
gift or dedication, and is hereby empowered to ac-
quire, by purchase without condemnation or by pur-
chase through condemnation proceedings, and there-
after maintain and operate as an airport, or lease
or sell, to the Federal Government, tracts of land
either within or without the corporate limits of
such city and within the county in which such city
is situated, and the Commissioners' Court of any
county may likewise acquire, maintain and operate
for like purpose tracts of land within the limits of
the county.

"*******

"D-In addition to the power herein granted, the Com-
missioners' Court of the several counties of this State
are hereby authorized to lease any airport that may be
acquired by the county, as herein provided, to any incor-

porated city or municipality within such county
or to the Federal Government, for the purpose o
maintaining and operating an airport; and pro-
vided further that any incorporated city having
acquired land for an airport, or an airport,
under the authority of this Act, shall have the
right to lease said land or said airport to the
county in which said incorporated city is locat  ι.

"*******

"Sec. 3.  Any airport acquired under and  ɣ
virtue of the terms of this Act shall be under   ιe
management and control of the governing body ο  the
city or the Commissioners' Court of the county   c-
quiring the same, which is hereby expressly au   orized
and empowered to improve, maintain and conduct the
same as an airport, and for that purpose to make
and provide therein all necessary or fit improve-
ments and facilities and to fix reasonable charges
for the use thereof as such governing body or Com-
missioners' Court shall deem fit, and to make rules
and regulations governing the use thereof. <u>All
proceeds from such charges shall be devoted exclusively
to the maintenance, upkeep, improvement and operation
of such airport and the facilities, structures, and
improvements therein.</u> . ."

We infer from the above quoted parts of your letters
that the Federal Government has proposed "to turn this airport
over to Tarrant County" conditioned upon the county's maintain-
ing and operating said airfield or airport, subject to cer-
tain reservations.  If the County so contracts with the Federal
Government, it is our opinion that the County could not use
the property or any portion thereof for any purpose other
than airport purposes.  See Moore v. Gordon(dismissed) 122
S.W. 2d 239, 243.  Since the County would be obligated to
maintain and operate said airfield or airport, it necessarily
follows that the Commissioners' Court would be without
authority to lease the  whole or any part of said airfield
or airport.  On the other hand, should the contract permit
the County to lease said airfield or airport, the Commission-
ers' court would be bound by the provisions of Article 1269h,
and could only lease the same "to any incorporated city or
municipality within such County, or to the Federal Government,
for the purposes of maintaining and operating an airport"
and for no other purpose.

As to your second question concerning the use of
any profit made by the county through the operation of the

Hon. J. M. Williams, page 4          0-7032


airport, we call special attention to the underlined portion
of Section 3 of Article 1269h supra.  In order "to devote ex-
clusively to the maintenance, upkeep, improvement and opera-
tion of such airport and the facilities, structures, and
improvements therein" all the proceeds derived from charges
for the use of said airport, it becomes necessary to set up
an Airport Fund.  However, if it is necessary to use any tax
money in the operation of said airport, such expenditures
should be paid out of the General Fund.  If it is necessary
to use tax money to make permanent improvements to the air-
port, such expenditures should be paid out of the Permanent
Improvement Fund.  We are sending you a copy of our Opinion
No. 0-6762 which fully discusses this matter.

        Trusting we have satisfactorily answered your in-
quiry, we remain

                          Yours very truly

                          ATTORNEY GENERAL OF TEXAS


                          By s/J.C. Davis, Jr.
                             J.C. Davis, Jr.
                             Assistant

JR:djm:wc                 By s/John Reeves
                             John Reeves


APPROVED MAY 23, 1946
s/Grover Sellers
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/BWB Chairman